IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEYBANK NATIONAL ASSOCIATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Civil Action No. 09-1238 |
| ) | |
| VOYAGER GROUP, LP and VOYAGER, ) | |
| INVESTMENTS, LP, ) | |
| ) | |
| Defendants. ) | |

AMBROSE, District Judge.

## OPINION AND ORDER OF COURT

### SYNOPSIS

Pending before the Court is the Motion to Transfer Venue to the District of Montana Pursuant to §1404(a) filed by Defendants Voyager Group, LP and Voyager Investments, LP (Doc. No. 10). Both parties have filed briefs in these matters. (Doc. Nos. 12, 20). After careful consideration of the submissions of the parties, and for the reasons discussed below, the Voyager Defendants' Motion (Doc. No. 10) is denied.

### I. FACTS

Plaintiff KeyBank National Association (Keybank or Plaintiff) is a national banking association with its principal place of business in Ohio. (Complaint ¶ 1). Defendant Voyager Group, LP is a Montana limited partnership organized and existing under the laws of the State of Montana, with its principal place of business in Pittsburgh. (Complaint ¶ 2; Affidavit of Douglas L. Hein, Doc. No. 11, ¶ 11). Defendant Voyager Investments LP is a Pennsylvania limited partnership organized and existing under the laws of Pennsylvania with its principal place of business in Pittsburgh. (Id. at ¶ 3; Id.).

On or about September 28, 2007, KeyBank extended a $5,000,000 loan to Spanish Peaks Lodge, LLC ("Spanish Peaks") pursuant to a Letter Loan Agreement dated as of September 28, 2007. (Complaint ¶ 7). In connection with its execution of the Loan Agreement, Spanish Peaks also executed and delivered a promissory note in favor of KeyBank in the amount of five million dollars. (Complaint ¶ 9). In order to induce KeyBank to enter into the Credit Note and make the Loan associated therewith to Spanish Peaks, Defendants Voyager Investments and Voyager Group executed and delivered a guaranty to Plaintiff, the alleged breach of which is the subject of the instant suit. (Complaint ¶ 12).

Prior to the execution of the aforementioned loan, in May 2007, KeyBank and SP Lodge commenced discussions concerning a potential construction loan for what was known as the "Lodge Project" which was to be part of the "Club at Spanish Peaks" which was to feature golfing, skiing, and other leisure activities for its residents who purchased real estate, homes, and memberships. (Answer, Affirmative Defenses, and Counterclaims ("Answer"), ¶ 48, 52). By the spring of 2007, Spanish Peaks had successfully completed the infrastructure necessary to develop the overall Lodge Project and related property, including the construction of a golf course, club house, roads, sewer, water, and power facilities - and had sold numerous parcels of real estate for the construction of homes. (Answer ¶ 49). To construct the Lodge Project, Spanish Peaks sought approximately $120 million in financing. (Answer ¶ 51).

As part of their underwriting process, KeyBank required an appraisal of the Lodge Project and engaged Intermountain Consultants Inc. for this purpose in July 2007. (Answer ¶ 54). Spanish Peaks immediately expressed concern over the ability of Intermountain to arrive at an accurate value of the Lodge Project. (Answer ¶ 55). On July 31, 2007, KeyBank provided a written Commitment Letter to lend $120 million to Spanish Peaks for the development and construction of the Lodge Project subject to certain terms and conditions (Answer ¶ 57; July 31,

2007 Loan Commitment from KeyBank, attached as Exhibit A to Answer). The conditions that required satisfaction prior to closing were certain pre-sale requirements, valuation-appraisal requirements, environmental assessment, and numerous other requirements articulated within. (Id.). The commitment would expire if the loan documents were not executed on or before October 15, 2007. (Answer ¶ 57).

The five million dollar loan was negotiated separately with the anticipation that the smaller loan would be repaid with the proceeds from the larger financing then subject to the Commitment Letter. (Answer ¶¶ 64-66). As noted above, the Voyager entities guaranteed the repayment of the five million dollar loan. (Answer ¶ 67).

The $120 million construction loan failed to close by the specified date because KeyBank's selected appraiser, Intermountain, resigned from the project in October stating that it lacked the requisite ability to properly appraise the Lodge project. (Answer ¶ 71). KeyBank then engaged Cushman & Wakefield, one of the firms originally suggested by Spanish Peaks, to appraise the Lodge project. The engagement of the new appraiser delayed the finalization of the syndicate and prevented timely closing. (Answer ¶ 72). From October 2007 to February 2008, Cushman & Wakefield appraised the Lodge Project. (Answer ¶¶ 73-74).

Based on the Cushman & Wakefield appraisal, KeyBank reduced the size of its loan commitment, requiring Spanish Peaks to secure the remaining monies from an alternative funding source or an equity contribution. (Answer ¶ 77). The Voyager Defendants argue that Spanish Peaks was capable, willing, and, in fact, did contribute the additional equity and alternative funding necessary to close the financing gap, but after months of representations and promises, KeyBank failed to keep its promise of providing substantial credit for the Lodge Project. (Answer, ¶¶ 76-94).

II. PROCEDURAL HISTORY

Plaintiff filed its complaint against the Voyager Defendants on September 11, 2009. (Doc. No. 1). In its complaint, Plaintiff KeyBank alleges one count of breach of payment guaranty against each Voyager Defendant. Defendants filed an answer, affirmative defenses, and counterclaims to Plaintiff's complaint on October 5, 2009. (Doc. No. 5). Defendants' counterclaims include five separate claims against Plaintiff. They allege that Plaintiff made clear and unambiguous promises and that the Voyager Defendants detrimentally relied on those promises under a theory of promissory estoppel (Count I); that Plaintiff engaged in a breach of the duty of good faith and fair dealing (Count II); that the Plaintiff engaged in fraudulent or negligent misrepresentations (Count III); that the Plaintiff engaged in constructive fraud (Count IV); and that the Voyager Defendants are entitled to declaratory judgment (Count V).

Subsequent to the filing of the action in the Western District of Pennsylvania on October 2, 2009, Spanish Peaks, LLC, Voyager Group, L.P., and Voyager Investments, L.P. filed an action in the District of Montana. Spanish Peaks Lodge, LLC, et al v. KeyBank National Association, et al., Case No. 2:09-cv-00074-SEH-RKS (D.Mont.). On October 15, 2009, Defendants filed, in the Western District action, a Motion to Transfer Venue to the District of Montana Pursuant to § 1404(a). (Doc. No. 10). In its Motion to Transfer, Defendants argue that venue is proper in the District of Montana and the private and public factors associated with §1404 (a) weigh in favor of transfer to the District of Montana.

### III. DEFENDANTS' MOTION TO TRANSFER

The Voyager Defendants suggest that I should transfer the instant action to the District of Montana for several reasons. First, they argue that a substantial part of the events or omissions occurred in Montana and that all parties are subject to personal jurisdiction in Montana. Citing to the Payment Guaranty, they also argue that the parties contractually consented to venue and personal jurisdiction in Montana. Second, they argue that the private

and public interest factors weigh in favor of a transfer to the District of Montana. Plaintiff counters that the Pennsylvania action was the "first-filed" action thus obligating this Court to hear the action. Additionally, it suggests that the private and public factors weigh against transfer.

A. STANDARD OF REVIEW

The language of 28 U.S.C. § 1404(a), which governs cases in which the forum court has proper venue, provides simply that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In ruling on a motion to transfer, the Court should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). As a preliminary matter, the Court must determine whether venue would be proper in the transferee district. The second step then encompasses whether a transfer would be in the interests of justice.Id. The party seeking transfer on the grounds of inconvenience has the burden of showing that the existing forum is inconvenient. Medtronic Inc. v. Boston Scientific Corp., 587 F.Supp.2d 648, 654 (D.Del. 2008).

The second inquiry employs a "multi-factor balancing test" embracing the statutory criteria, including the convenience of the parties and the witnesses and the interests of justice, and all relevant factors including certain private and public interests.Jumara, 55 F.3d at 875, 879. While there is no definitive formula or list of factors to consider, there are identified potential factors characterized as either private or public interests.Id. The private interests that may be considered include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and records, to the extent they could not be produced in the alternative forum. Id. at 879. The relevant public interests include, "[t]he

enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." Id. at 879-80 (citations omitted).

B. FIRST-FILED ACTION ARGUMENT

As noted, Defendants argue that because this action was filed prior to the Montana action, this court must resolve the instant case pursuant to the first-filed rule. This rule is not part of the balancing test for a §1404(a) transfer, but is being utilized by the Defendants to suggest that this Court "must maintain jurisdiction pursuant to the first-filed rule."

"The first-to-file rule gives courts the power to dismiss subsequent claims involving the same parties and the same issues already before another court." Time Warner Cable, Inc. v. GPNE Corp., 497 F.Supp.2d 584, 588 (D.Del. 2007). According to the parties, a motion to dismiss, stay or transfer has been filed in the Montana District court. Although Plaintiff suggests that the first-to-file rule requires that this Court keep the instant matter, the first-to-file rule is generally used to "dismiss or stay a later-filed action" and does not negate the possibility of a discretionary transfer by the first-filed Court due to an inconvenient forum. FMC Corp v. AMVAC Chem Corp, 379 F.Supp.2d 733, 737 (E.D.Pa. 2005)[1]; see also Weber v. Basic Comfort Inc., 155 F.Supp.2d 283, 287 (E.D.Pa. 2001). "[S]imply because a court is the first to obtain jurisdiction does not necessarily mean that it should decide the merits of the case" and does not foreclose discretionary decisions on venue. See Hospah Coal Co. v. Chaco Energy Co., 673 F.2d 1161, 1164 (10th Cir. 1982); Weber, 155 F.Supp.2d at 287. While this action was filed first, I do not find that this rule forecloses a transfer to the District of Montana if that is in

---

[1] In any event, the decision to apply the first-filed rule rests with the district Court. Pittsburgh Logistics Systems, Inc. v. C.R. England, Inc, - - F.Supp.2d - -, 2009 WL 3756690, * 8 (W.D.Pa. November 9, 2009).

fact a more proper venue and does not alter the test under which this Court evaluates venue pursuant to § 1404.

## C. MONTANA AS A POSSIBLE VENUE

The threshold question in evaluating transfer is whether this suit could have been brought originally in the District of Montana, the venue which Defendants currently seek. The parties do not dispute that this action could have been properly brought in Montana as all three entities submitted to personal jurisdiction and venue in Montana pursuant to the Payment Guaranty. (See Plaintiff's Complaint, Doc. No. 1, Exhibit 4, §8). Subject matter jurisdiction would also exist in Montana pursuant to 28 U.S.C. § 1332(a)(1) due to the noted diversity of citizenship of the corporations involved and the matter in controversy exceeding $75,000. Therefore, this preliminary issue is met for the purposes of this motion.

## D. BALANCING INTERESTS OF JUSTICE AND CONVENIENCE OF PARTIES AND WITNESSES

### i. Choice of Venue

In ruling on a motion to transfer, Plaintiff's choice of venue should not be lightly disturbed. Jumara, 55 F.3d at 879. However, where a plaintiff chooses a forum that is not its state of residence, the choice is given less weight. See Weber v. Basic Comfort Inc., 155 F.Supp.2d 283, 285 (E.D.Pa. 2001). Defendants suggest that two factors weigh against Plaintiff's choice of venue: 1) the existence of a forum selection clause in the Payment Guaranty and 2) the fact that Plaintiff chose a forum outside of its state of residence.

Since the presumed preferred venue of Plaintiff is that in which suit was filed, the Western District of Pennsylvania will be considered Plaintiff's choice of venue. The Voyager Defendants argue that section 8 of the Guaranty operates as a mandatory forum selection clause, thus foreclosing the Western District of Pennsylvania as a convenient venue in favor of Montana. It is evident from the language of the clause, however, that the provision was merely

7

meant to establish the jurisdiction necessary for Montana to be a possible venue, not the only venue. Section 8 of the Guaranty states as follows.

> THE LENDER AND EACH GUARANTOR IRREVOCABLY (A) SUBMIT TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS HAVING JURISDICTION IN OR FOR, THE COUNTY OF GALLATIN, STATE OF MONTANA, AND (B) WAIVE ANY OBJECTION WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY PROCEEDING BROUGHT IN ANY SUCH COURT, WAIVE ANY CLAIM THAT ANY PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM AND FURTHER WAIVE THE RIGHT TO OBJECT, WITH RESPECT TO SUCH PROCEEDING, THAT SUCH COURT DOES NOT HAVE JURISDICTION OVER SUCH PARTY. *NOTHING IN THIS GUARANTY SHALL PRECLUDE THE LENDER FROM BRINGING A PROCEEDING ON BEHALF OF THE LENDER IN ANY OTHER JURISDICTION NOR WILL THE BRINGING OF A PROCEEDING IN ANY ONE OR MORE JURISDICTIONS PRECLUDE THE BRINGING OF A PROCEEDING IN ANY OTHER JURISDICTION.*

(Plaintiff's Complaint, Doc. No. 1, Exhibit 4)(emphasis added). Based on the plain language of the second sentence, the Lender obviously retained its right to bring suit in a venue other than Montana, thus the clause was permissive and not mandatory. "The general rule in cases containing forum selection clauses is that when only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." Chisso Am., Inc. v. M/V Hanjin Osaka 307 F.Supp.2d 621, 624 (D.N.J.2003) (quoting John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc, 22 F.3d 51, 52 (2d Cir.1994)). This in no way suggests a mandatory venue or that Plaintiff's forum preference was Montana.

The Affidavit of Douglas Hein, Chief Financial Officer of Voyager Group, LP, indicates that Voyager Group LP is a business incorporated in the state of Montana with a principal place of business in Pennsylvania. Voyager Investments, LP is a business incorporated in Pennsylvania with a principal place of business in Pennsylvania and KeyBank National and its

affiliates are incorporated "nationally" or in Ohio with principal places of business in Ohio. (Affidavit of Douglas L. Hein, Doc. No. 11, ¶ 11). Plaintiff is most decidedly a "resident" of Ohio which suggests that its choice should be given less deference than it otherwise would. I note, however, that both of the Voyager entities have principal places of business in Pittsburgh, Pennsylvania with Voyager Investments, LP being incorporated in Pennsylvania. As a result, it is evident that while Plaintiff's residency status may reduce the weight given of its forum choice, this choice should still be given weight because of the Defendants' ties to this District.

ii. The Operative Facts

The parties dispute whether the operative facts involved in this case arose in this judicial district or in the District of Montana. The Voyager entities provide evidence that KeyBank first expressed interest in financing the Lodge Project in Montana, had appraisers travel to Montana, held a meeting in Montana, sent a representative to Montana, and had conversations with Voyager Entities in KeyBank offices in Indianapolis Indiana; Cleveland, Ohio; and Bellevue, Washington or in the SP Lodge offices in Montana. (Hein Affidavit, ¶¶ 12, 14, 15). KeyBank provides evidence that the Letter Loan Agreement was executed in Pittsburgh by both Defendants and the borrower; the guaranty was executed in Pittsburgh; the six executed Loan Modifications and Affirmations of Guaranties were executed in Pittsburgh; the first meeting regarding the project was held in Pittsburgh; a subsequent meeting was held in Pittsburgh; and numerous phone calls were made for discussions with the Voyager entities to their Pittsburgh offices. (David Paisley Affidavit, Docket No. 20, Exhibit A, ¶¶ 4, 5, 7, 21-22, 24).

Considering that the loan documents were executed in Pittsburgh at the home base of the Voyager entities, this factor weighs in favor of venue in this district. Sending a representative and appraisers to Montana for a project based in Montana does not negate the fact that most of the negotiations regarding the funding, which is the central issue to both

9

Plaintiff's claims and the Voyager Entities Counterclaims, took place outside of Montana. Since it is the alleged breach of the Payment Guaranty and several promissory estoppel and fraud based claims regarding the funding for this project, not the construction project itself that is at issue, this factor weighs in favor of maintaining the venue in this District.

    iii.  Convenience of the Parties and Convenience of the Witnesses.

Plaintiff and Defendants also provide argument with respect to their relative financial conditions and physical ease of litigating in each venue. The Voyager Defendants argue that these factors weigh in favor of transfer because KeyBank is a larger corporation and a more financially savvy entity than the Voyager Entities, transfer would not impose significant additional hardship or inconvenience on either party, and that several witnesses would likely be "unavailable for trial in one of the fora." In response, KeyBank argues that the Voyager Defendants are also sophisticated corporate entities controlled by a multi-millionaire, transfer would cause increased inconvenience to the parties, and transfer would cause increased inconvenience to the key witnesses.

As was noted above, the Voyager Defendants both have principal places of business within this District. The convenience as far as their physical location, therefore, is greatest here. KeyBank has its principal place of business in Ohio which is significantly more convenient to this District than to that of Montana. In addition, both the Voyager Entities and KeyBank are sophisticated business entities. The Voyager Defendants cite to cases that suggest that where defendants were "publicly-traded corporations with global operations and annual revenues that exceed[ed] $2 billion," and plaintiff was a not-for-profit education institution, consideration of the convenience of the parties weighed against Defendants. See Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd., 2009 WL 3055300, at *3 (W.D.Pa. Sept. 21, 2009); See also Schreiber v. Eli Lilly & Co., 2006 WL 782441, *9 (E.D.Pa. March 27, 2006). Defendants are very far from being

a not-for-profit entity and were involved in the Lodge Project for the purposes of making significant profit on real estate development. This does not suggest a status in line with the entities discussed in the aforementioned cases. While KeyBank may be a larger corporation, the financial status of the parties does not weigh in favor of one particular entity over the other, especially considering the Voyager Entities' ties to this District.

With respect to the convenience of the witnesses, the Voyager Entities propose that they will require the testimony of several non-party witnesses that will be unavailable for process in this forum and will not willingly travel here. The Defendants note that these witnesses were "most heavily involved in the actual construction of the project." (Hein Affidavit, ¶ 12). Defendants suggest that employees of Spanish Peaks Lodge LLC, Spanish Peaks Holdings, LLC, American Land Development, LLC, Spanish Peaks Realty, LLC t/d/b/a River to Peaks, Dick Corporation, the appraisers, and several other banks would be unwilling to travel to Pennsylvania voluntarily. Despite the Voyager Entities contentions, it is evident that the Spanish Peaks entities and American Land Development are all affiliated with the main Voyager Group with James Dolan, who signed the loan documents at issue, as President and CEO.(See Website of Voyager Group, Doc. No. 20, Exhibit E). It is also noted that Douglas Hein, the Chief Financial Officer of the Pittsburgh-based Voyager Group, signed some of the documents as the Assistant Manager of SP Lodge, LLC. (Complaint, Exhibit 1). The noted entities are all listed on the Voyager Group website. (See Website of Voyager Group, Doc. No. 20, Exhibit E). Therefore, the suggestion that it will be difficult to obtain the testimony of employees of these affiliated entities is not particularly persuasive. Other than declaring that these individuals will not voluntarily appear, there has been no showing that these individuals will "actually be unavailable for trial in one of the fora." Jumara, 55 F.3d at 879. With respect to witnesses from Dick Corporation, the Voyager entities note that Dick is incorporated and has its principal place

of business in Pennsylvania. It does not follow that there will be particular difficulty in obtaining the testimony of its employees. (Hein Affidavit, ¶ 11). In addition, as noted, these individuals were involved particularly with the actual construction of the project, not the financing.

With respect to the individuals who were signatories to the financial documents and involved in the negotiations, Mr. Hein and Mr Dolan are notably both residents of Pennsylvania. (Paisley Aff., ¶¶ 4-5, 7, 12-25; Website of Voyager Group, Doc. No. 20, Exhibit E, http://www.voyagergrp.com/; Business Jet Traveler Online: Voyager Group's Jim Dolan, Doc. No. 20, Exhibit B). The negotiators and signatories on behalf of KeyBank are from Ohio or Indiana. Travel from these locations to Pittsburgh is a notably shorter distance. In summary, I am convinced that the convenience of the parties and witnesses weighs in favor of the Plaintiff.

   iv. Public Factors: Practical Considerations

Defendants suggest that "this action is a part of a larger, all-encompassing controversy pending in the District of Montana. A transfer of this action to that forum would unquestionably promote efficient judicial administration and prevent the waste of time, energy, and money for all parties involved." Plaintiff re-stresses their private interest arguments including location of witnesses, location of counsel, costs, travel time and also argue that consolidation is appropriate but only through a transfer of the Montana action to Pittsburgh.

The issue of the first-filed action was essentially re-raised with these arguments. As noted above, the rule does not specifically affect the § 1404(a) balancing. For practical purposes, however, the fact that the action here was filed first does weigh in favor of maintaining this action while allowing the Montana court to determine what to do with the second case as Defendants agree that their "counterclaims in this action are substantially similar to their claims filed in the District of Montana". Therefore, Defendants' suggestion that the action in the Montana court is an "all-encompassing controversy" that requires transfer is not

persuasive as they chose to file a second action in Montana with substantially similar claims to those filed here. I also will not revisit the remaining arguments reiterated by Plaintiff and Defendants that were dealt with previously; instead I acknowledge my prior findings above.

     v. Public Factors: Enforceability of the Judgment and Administrative Ability of Each Forum to Address the Dispute.

Both parties acknowledge that the administrative ability factor of this analysis does not support one particular party's argument over another. Defendants note that "data concerning the congestion of the dockets is ambiguous" and Plaintiff suggests that this "factor is a wash." The Court agrees that the evidence relative to this factor does not support one venue over another with respect to administrative ability. Plaintiff suggests that it would be easier to enforce the judgment in this District as compared to Montana because the Voyager entities' principal places of business are located here. While this may weigh slightly in favor of Plaintiff, these two factors do not particularly support one venue over another.

     vi. Public Factors: Relative Interest of the Two Courts, Public Policy, and Familiarity of Judge with Applicable Law.

Defendants argue that Montana has a stronger interest in hearing this action because there is a local interest in deciding local controversies at home. They suggest that this action centers on the development project in Big Sky, Montana and that the behavior of Plaintiff deprived SP Lodge, the Voyager Entities, and the local community of significant investment and job opportunities. They additionally argue that Montana has a significant interest in protecting the legal rights of its own corporations. Unfortunately for Defendants, Pennsylvania has the same interest in protecting its corporations, namely Voyager Investments, LP. It also has interests in protecting companies that do significant business in this state, like Voyager Group, LP, and in the enforcement of legal documents that are executed within this District.  While Montana may have an interest in the potential jobs and investments that the Spanish Peaks

13

project would bring, Pennsylvania has an interest in the potential for a judgment in favor of or against a Pennsylvania corporation or business located in Pennsylvania. Therefore, the relative interests of the two courts and public policy of the two states do not weigh in favor of one venue over another.

The parties state that their contracts call for the application of Montana law through a choice of law clause. Although I believe that Judges in the Western District are perfectly capable of applying Montana law if the need arises, this factor weighs in favor of a transfer to the District of Montana as judges in the District Court of Montana will inevitably be more familiar with Montana law than judges in the Western District of Pennsylvania.

vii. Conclusion

After balancing the public and private factors and acknowledging that a §1404(a) transfer is discretionary, the Court finds transfer of venue to the District of Montana to be unnecessary. The relative convenience of the parties and witnesses and this being Plaintiff's choice venue weigh heavily in favor of maintaining jurisdiction here. In addition, the operative facts of this suit and the counterclaims surround the financing, including loan documents signed in Pittsburgh and negotiations occurring between representatives of KeyBank and individuals in the Pittsburgh offices of the Voyager Entities. The choice of law clause inserted in the contracts does not overwhelm these other factors and as this Court is perfectly capable of applying Montana law, Defendants' motion to transfer will be denied.

## VI. CONCLUSION

In conclusion, based on the evidence of record and the briefs filed in support thereof, I find that the factors weigh in favor of maintaining venue in the Western District of Pennsylvania. Therefore, Defendants' Motion for Transfer is Denied.

BY THE COURT:

/s/ Donetta Ambrose

Donetta Ambrose

U.S. District Judge

15

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEYBANK NATIONAL ASSOCIATION,<br><br>      Plaintiff,<br><br>-vs-<br><br>VOYAGER GROUP, LP and VOYAGER, INVESTMENTS, LP,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)   Civil Action No. 09-1238<br>)<br>)<br>)<br>)<br>) |

AMBROSE, District Judge.

## ORDER

AND NOW, this 22nd day of December, 2009, it is Ordered that Defendants' Motion for Transfer to Montana Pursuant to § 1404(a) (Docket No. 10) is DENIED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose,
U.S. District Judge

16