IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEYBANK NATIONAL ASSOCIATION,          )
                                        )
                Plaintiff,              )
                                        )
        -vs-                            )          Civil Action No. 09-1238
                                        )
VOYAGER GROUP, LP and VOYAGER,          )
INVESTMENTS, LP,                        )
                                        )
                Defendants.             )

AMBROSE, District Judge.

## OPINION AND ORDER OF COURT

### SYNOPSIS

Pending before the Court is the Motion to Dismiss Answer to Complaint and

Counterclaims filed by Plaintiff Keybank National Association (Doc. No. 16). Both parties have

filed briefs in these matters. (Doc. Nos. 17, 23). After careful consideration of the submissions

of the parties, and for the reasons discussed below, Keybank National's motion (Doc. No. 16) is

GRANTED in part and DENIED in part.

### I. STANDARD OF REVIEW

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) for a Motion to

Dismiss if, reading the complaint in the light most favorable to the non-moving party, and

accepting all factual allegations as true, no relief could be granted under any "reasonable

reading of the complaint" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008). A

complaint must be dismissed even if the claim to relief is "conceivable," because a plaintiff must

allege "enough facts to state a claim to relief that is plausible on its face."Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."Ashcroft v. Iqbal, ---U.S. ----, --
--, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

## II. FACTS

Plaintiff KeyBank National Association (Keybank or Plaintiff) is a national banking
association with its principal place of business in Ohio. (Complaint, Doc. No. 1, ¶ 1). Defendant
Voyager Group, LP is a Montana limited partnership organized and existing under the laws of
the State of Montana, with its principal place of business in Pittsburgh. (Complaint ¶ 2).
Defendant Voyager Investments LP is a Pennsylvania limited partnership organized and
existing under the laws of Pennsylvania with its principal place of business in Pittsburgh. Id. at
¶ 3;).

On or about September 28, 2007, KeyBank extended a $5,000,000 loan to Spanish
Peaks Lodge, LLC ("SP Lodge") pursuant to a Letter Loan Agreement dated September 28,
2007. (Complaint ¶ 7; Answer ¶ 70). The Voyager Entities were signatories to this contract as
"guarantors." (Complaint, Exhibit 1). In connection with its execution of the Loan Agreement, SP
Lodge also executed and delivered a promissory note in favor of KeyBank in the amount of five
million dollars. (Complaint ¶ 8, Exhibit 2). Defendants Voyager Investments and Voyager Group
executed and delivered a Payment Guaranty to Plaintiff, the alleged breach of which is the
subject of the instant suit. (Answer, Affirmative Defenses, and Counterclaims ("Answer"), Doc.
No. 5, ¶ 12; Complaint, Exhibit 4). The Loan Documents were subsequently modified by a
series of amendments on at least six separate occasions. (Answer ¶ 80; Complaint ¶ 9 and
Exhibit 3).

Prior to the execution of the aforementioned loan, in May 2007, KeyBank and SP Lodge
commenced discussions concerning a construction loan for what was known as the "Lodge
Project" which was to be part of the "Club at Spanish Peaks" which was to feature golfing,

2

skiing, and other leisure activities for its residents who purchased real estate, homes, and memberships. (Answer, ¶ 48, 52). By the spring of 2007, SP Lodge had successfully completed the infrastructure necessary to develop the overall Lodge Project and related property, including the construction of a golf course, club house, roads, sewer, water, and power facilities - and had sold numerous parcels of real estate for the construction of homes. (Answer ¶ 49). To construct the Lodge Project, SP Lodge sought approximately $120 million in financing. (Answer ¶ 51).

As part of their underwriting process, KeyBank required an appraisal of the Lodge Project and engaged Intermountain Consultants Inc. for this purpose in July 2007. (Answer ¶ 54). SP Lodge immediately expressed concern over the ability of Intermountain to arrive at an accurate value of the Lodge Project. (Answer ¶ 55). On July 31, 2007, KeyBank provided a written Commitment Letter to lend $120 million to SP Lodge for the development and construction of the Lodge Project subject to certain terms and conditions (Answer ¶ 57; July 31, 2007 Loan Commitment from KeyBank, Exhibit A to Answer). The conditions that required satisfaction prior to closing were certain pre-sale requirements, valuation-appraisal requirements, environmental assessment, and numerous other requirements articulated within. (Id.). The commitment would expire if the loan documents were not executed on or before October 15, 2007. (Answer ¶ 57, 60).

On September 14, 2007, a letter was sent from David C. Paisley of KeyBank representing in writing to Dick Corporation, the general contractor, that KeyBank had committed to financing the project and that the loan was in the closing process. (Answer ¶ 62 and Exhibit B). On September 17 and 18, 2007, SP Lodge and KeyBank met at Spanish Peaks with representatives of various banks interested in joining the lending syndicate that KeyBank had agreed to form to underwrite the $120 million credit facility. At or after the meeting, lenders

necessary to complete the loan agreed to join the syndicate, pending the completion of KeyBank's appraisal. (Answer ¶ 61).

The five million dollar loan was negotiated separately with the anticipation by the Voyager Entities that the smaller loan would be repaid with the proceeds from the larger financing then subject to the Commitment Letter. (Answer ¶¶ 64-66). As noted above, the Voyager entities guaranteed the repayment of the five million dollar loan. (Answer ¶ 67). The $5 million dollar loan had a 90-day term with one 30-day extension. (Answer ¶ 70).

The $120 million construction loan failed to close by the specified date because KeyBank's selected appraiser, Intermountain, resigned from the project in October stating that it lacked the requisite ability to properly appraise the Lodge project. (Answer ¶ 71). KeyBank then engaged Cushman & Wakefield, one of the firms originally suggested by SP Lodge, to appraise the Lodge project. The engagement of the new appraiser delayed the finalization of the syndicate and prevented timely closing. (Answer ¶ 72). From October 2007 to February 2008, Cushman & Wakefield appraised the Lodge Project. (Answer ¶¶ 73-74).

Based on the Cushman & Wakefield appraisal, KeyBank reduced the size of its loan commitment, requiring SP Lodge to secure the remaining monies from an alternative funding source or an equity contribution. (Answer ¶ 77). The Voyager Defendants argue that SP Lodge was capable, willing, and, in fact, did contribute the additional equity and alternative funding necessary to close the financing gap, but after months of representations and promises, KeyBank failed to keep its promise of providing substantial credit for the Lodge Project. (Answer, ¶¶ 76-94). On August 20, 2009, KeyBank, through its counsel, demanded that the Voyager entities repay the $5 million bridge loan immediately. (Answer, ¶ 89). The instant litigation followed.

### III. PROCEDURAL HISTORY

4

Plaintiff filed its complaint against the Voyager Defendants on September 11, 2009. (Doc. No. 1). In its complaint, Plaintiff KeyBank alleges one count of breach of payment guaranty against each Voyager Defendant. Defendants filed an answer, affirmative defenses, and counterclaims to Plaintiff's complaint on October 5, 2009. (Doc. No. 5). Defendants' counterclaims include five separate claims against Plaintiff. They allege that Plaintiff made clear and unambiguous promises and that the Voyager Defendants detrimentally relied on those promises under a theory of promissory estoppel (Count I); engaged in a breach of the duty of good faith and fair dealing (Count II); engaged in fraudulent or negligent misrepresentations (Count III); and engaged in constructive fraud (Count IV). The Voyager Defendants also put forth a request for declaratory judgment (Count V).

Subsequent to the filing of the action in the Western District of Pennsylvania on October 2, 2009, Spanish Peaks, LLC, Voyager Group, L.P., and Voyager Investments, L.P. filed an action in the District of Montana. Spanish Peaks Lodge, LLC, et al v. KeyBank National Association, et al., Case No. 2:09-cv-00074-SEH-RKS (D.Mont.). On October 15, 2009, Defendants filed, in the Western District action, a Motion to Transfer Venue to the District of Montana Pursuant to § 1404(a). (Doc. No. 10). On October 28, 2009, in lieu of an answer to Defendants' counterclaims, Plaintiff filed a motion to dismiss. (Doc. No. 16). Plaintiff argues that the Payment Guaranty prohibits the Voyager entities from asserting counterclaims and that each Count of the Voyager Defendants counterclaims fail to state a cause of action. On December 22, 2009, I denied Defendants' Motion to Transfer Venue. (Doc. No. 24). Therefore, Plaintiff's motion to dismiss is ripe for disposition.

## IV. PLAINTIFF'S MOTION TO DISMISS

The Voyager Entities have made counterclaims for promissory estoppel, breach of the duty of good faith and fair dealing, fraudulent and/or negligent misrepresentation, constructive

5

fraud, and request declaratory judgment stating that there is a "substantial and continuing controversy between Voyager entities and KeyBank concerning whether the Voyager entities have a legal obligation to repay the \$5 million bridge loan." (Answer, ¶¶ 95-130). These same arguments are asserted as affirmative defenses. (Answer, ¶¶ 24-42). KeyBank argues that the Payment Guaranty prohibits the Voyager Entities from asserting counterclaims at this time. They further argue that for each Count, the Voyager entities have failed to state a claim upon which relief could be granted.

A.    THE DOCUMENTS AND MERGER

KeyBank argues that pursuant to the doctrine of merger, the Voyager entities are foreclosed from bringing counterclaims with respect to the repayment of the five million dollar loan because no prior or contemporaneous oral agreements or understandings may be considered after the Payment Guaranty was executed. It also argues that the Payment Guaranty includes a clause that forecloses the right of the Voyager Entities to bring a counterclaim prior to the full satisfaction of their contractual repayment obligations. The Voyager Entities executed several documents with KeyBank, which are attached to KeyBank's complaint, including affirmation of the Letter Loan Agreement between SP Lodge (Complaint, Exhibit 1), the Payment Guaranty on the \$5 million dollar loan (Complaint, Exhibit 4), and affirmation of six modifications of the Loan Agreement (Complaint, Exhibit 3).

The parties have agreed that Montana law applies to the contracts and alleged promises that are the subject of the aforementioned claims. KeyBank argues merger, suggesting that the Voyager Entities are blocked from making their counterclaims because the Payment Guaranty unconditionally requires payment and prohibits the Voyager Entities from making counterclaims at this time. "As a general rule, the parol evidence rule precludes the admission of extrinsic evidence of an unambiguous integrated writing in any situation involving parties to the

6

instrument when the rights and duties created by the document are the dispositive issue."

Richards v. JTL Group, Inc., 350 Mont. 516, 522 (2009)(citations omitted).  In Montana, the

doctrine of "merger" as part of the parol evidence rule is codified.See Mont. Code Ann. §§ 28-2-

904, 28-2-905 (2009). Section 28-2-904 provides:

> The execution of a contract in writing, whether the law requires it
> to be written or not, supersedes all the oral negotiations or
> stipulations concerning the matter which preceded or
> accompanied the execution of the instrument.

Section 98-2-905 "provides that when an agreement has been reduced to writing by the parties,

there can be no evidence of the terms of the agreement other than the contents of the writing

except when a mistake or imperfection in the writing is claimed or when the validity of the

agreement is the fact in dispute." Sherrodd, Inc. v. Morrison-Knudsen Company, 249 Mont. 282,

286 (Mont. 1991). Pursuant to 98-2-905, "fraud or illegality" also permits evidence external to

the agreement. The parol evidence rule bars evidence of oral agreements when the terms of a

written agreement "indicate the intent of the parties that the written memorialization represents

the complete and final agreement between the parties."Brimstone Min., Inc. v. Glaus, 317 Mont.

236, 251 (2003).

The Voyager Entities argue that merger is inapplicable for several reasons: 1) their

counterclaims do not concern the subject matter of the Payment Guaranty, but instead separate

and distinct promises; 2) that claims of fraud and breach of the duty of good faith and fair

dealing are not barred by merger; and 3) the pleadings do not permit a reasonable inference

that the parties' relationship is embodied in a single writing that is complete, accurate and

unambiguous and that such a writing is attached to any of the pleadings.

1. OPERATION OF PAROL EVIDENCE RULE

The Voyager Entities claim that their allegations actually include other separate and

distinct promises that have no bearing on the written Letter Loan Agreement and Payment

7

Guaranty. It can be assumed that the Voyager Entities' assertion in its brief that the pleadings do not permit a reasonable inference that the parties' relationship is embodied in a single writing that is complete, accurate and unambiguous and that such a writing is attached to any of the pleadings is an assertion that the "complete and final agreement" requirement of the parol evidence rule has not been met in the instant case. Based on the pleadings and attached documents, I will refrain from determining the applicability of the parol evidence rule before discovery has been taken as it would be inappropriate at this stage to determine whether the Payment Guaranty was the complete and final writing between the parties. The Voyager Entities pleadings suggest that there may be further documentation. Therefore, I will analyze each claim from the standpoint of whether sufficient factual allegations have been rendered so as to state a claim.

2.     THE OPERATION OF CLAUSE 3 OF THE PAYMENT GUARANTY

KeyBank also argues that Clause 3(b) or the Payment Guaranty operates to foreclose the Voyager Entities from making counterclaims at this time. Clause 3(b) states as follows:

> 3.     Each guarantor does hereby...(b) agree to refrain from asserting, until after repayment in full of the Loan and all other Indebtedness, any defense, right of set-off or other claim which said Guarantor may have against Borrower...

(Complaint, Exhibit 4). At the outset of the document, Voyager Group LP and Voyager Investments LP are listed as the "Guarantor" and Spanish Peaks Lodge, LLC is listed as "Borrower." Id. The Clause self-evidently blocks defenses, rights to set-off or other claims which the Voyager entities may have against Spanish Peaks Lodge, LLC. Spanish Peaks is not being sued nor are any defenses being asserted against Spanish Peaks by the Voyager Entities in this action. This Clause, on its face, does not propose to block defenses or claims as against the "Lender", in this case KeyBank.

The next clause, Clause 3(c), which KeyBank failed to reference, states,

8

>     3.    Each guarantor does hereby...waive any defense, right to
>           set-off or other claim which such Guarantor or Borrower
>           may have against Lender, or the holder of the Note.

(Complaint, Exhibit 4). The Voyager Entities' only generally state that "any provision of the

Payment Guaranty that theoretically might otherwise foreclose the Voyager Entities' rights to

assert Counterclaims in this action would be void as a matter of law." Since at this stage, neither

party has fully briefed the issue of whether this Clause operates as a valid release of all of the

Voyager Entities' claims and defenses and I am refraining from ruling on the operation of the

parol evidence rule, I will forego making a definitive ruling on this issue at this time.

B.    PROMISSORY ESTOPPEL CLAIM

        Plaintiff argues that the Voyager Entities have failed to state a cause of action for

promissory estoppel. In Montana, the elements that are required to state a cause of action for

promissory estoppel are: (1) a promise clear and unambiguous in its terms; (2) reliance on the

promise by the party to whom the promise is made; (3) reasonableness and foreseeability of the

reliance; (4) the party asserting the reliance must be injured by the reliance.Keil v. Glacier Park,

Inc., 188 Mont. 455, 462 (1980). The Voyager Entities allege that five clear and unambiguous

promises were made to them by KeyBank including:

>       KeyBank promised that it would engage an appraiser with the
>       ability to appraise the Lodge Project in a timely manner.
>
>       KeyBank promised that it would close on the $120 million credit
>       facility for the construction of the Lodge Project on or before
>       October 15, 2007.
>
>       KeyBank promised that the $5 million bridge loan would be repaid
>       using the proceeds of the $120 million credit facility.
>
>       KeyBank promised that the Voyager entities' gurantees on the $5
>       million bridge loan would be discharged by the repayment of the
>       bridge loan using the proceeds of the $120 million credit facility;
>       and

9

> After failing to assemble and close on a $120 million credit facility
> by October 15, 2007, KeyBank continually promised throughout
> 2007 and 2008 that it would close on a credit facility sufficient to
> allow SP Lodge to complete construction of the Lodge Project,
> repay the $5 million bridge loan and discharge the guarantees.

(Answer, ¶ 99). The Voyager Entities contend that each of these promises was clear and
unambiguous on its face and induced reasonably foreseeable detrimental reliance.

As to the first promise relating to the engagement of a competent appraiser, KeyBank
suggests that this promise was made to SP Lodge and not to the Voyager Entities and suggests
that both SP Lodge and the Voyager Entities were aware of the credentials of the appraiser and
still went ahead with the five million dollar loan. Since KeyBank makes nothing more than a
factual assertion in support of their contention, this argument is unpersuasive and the pleadings
properly set forth the allegation that the promise was made to the Voyager Entities. In addition,
although the Voyager Entities acknowledge that there was some concern about the credentials
of the first appraiser, this does not suggest that it was not reasonably foreseeable that they
would not rely on the alleged promise by KeyBank to their detriment. As alleged in the
pleadings, the Voyager Entities relied on this promise when agreeing to guarantee the five
million dollar "bridge loan" that was to continue the project until such time as the larger loan
could close. (Answer ¶ 100).

As to the second promise, KeyBank suggests that the promise to close by October 15,
2007 was contingent on certain conditions including the completion of an appraisal, which was
not completed by the October deadline. It also suggests that the Commitment Letter
unambiguously stated that "definitive Loan Documents" needed to be executed by October 15,
2007 for the loan to come to fruition. Since I am declining to rule on the interplay between the
documents that are or are not attached to the pleadings at this stage, it is sufficient that Plaintiff
alleges that it was the fault of KeyBank that the appraisal was not completed by the October

10

deadline. It was reasonably foreseeable, based on the pleadings, that the Voyager Entities would rely on the total project loan closing by October when guaranteeing the five million dollar loan that was inadequate to complete the SP Lodge project.

The third and fourth alleged promises deal with the repayment of the five million dollar loan and the discharge of the guaranty on that loan with the proceeds of a larger loan. KeyBank once again claims that contractual "conditions" bar this claim and that "common sense dictates that the Voyager entities could not have detrimentally relied upon such promises, or were injured as a result." At this stage, neither of these arguments are persuasive. The Voyager Entities claim that they detrimentally relied on these repeated promises when agreeing to guaranty the five million dollar loan. The Voyager Entities claim detriment in the form of the Lodge project never being completed, hence it never making profits to repay the loan. They assert that the $120 million dollar loan was required to finish this project. KeyBank's claims that the Voyager Entities would have been worse off if they had guaranteed a $120 million dollar loan do not negate this assertion.

The fifth promise deals with continuing promises through 2007 and 2008 to close on the second loan or credit facility in order to pay back the five million dollar loan. KeyBank argues that the promise to close on the credit facility was made to SP Lodge and not the Voyager Entities and that the promise is not actionable as it is not "clear and unambiguous" in its terms. First, as noted above, I do not find KeyBank's mere assertion that these promises were made to SP Lodge rather than the Voyager Entities to in any way negate this claim. Secondly, although KeyBank suggests that the promise was ambiguous because it did not specify a loan amount, the pleadings plainly state that the amount would be "a credit facility sufficient to allow SP Lodge to complete construction of the Lodge Project." Along with the Voyager Entities' other

11

factual assertions regarding loan negotiations after the October 2007 date, this is sufficiently clear to state a claim for promissory estoppel.

As a result, the Voyager Entities' have sufficiently alleged a claim for promissory estoppel and KeyBank's motion will be denied as to Count I.

## C.   GOOD FAITH AND FAIR DEALING CLAIM

KeyBank argues that the Voyager Entities have failed to state a claim under the present set of facts and suggests that a "special relationship" must exist between the parties for a breach of the covenant of good faith and fair dealing claim to attach. KeyBank suggests that a special relationship is always required when making a breach of covenant claim, which is clearly not the case. Under Montana law, every contract, regardless of type, contains a covenant of good faith and fair dealing. Story v. City of Bozeman 242 Mont. 426, 450 (1990). To state a claim, "a breach of the underlying contract is not a prerequisite to a breach of the implied covenant of good faith and fair dealing." Farris v. Hutchinson, 254 Mont. 334, 375 (1992). For contracts not covered by a more specific contractual provision, the standard for a breach is:

> The conduct required by the implied covenant of good faith and fair dealing is honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.

MCA § 28-1-211.

In common contract actions, a "special relationship" is not required between the parties for actions for contract damages. A breach of covenant can also give rise to tort damages when there is a "special relationship." Story, 242 Mont. at 452. A "special relationship" is delineated when:

> (1) the contract must be such that the parties are in inherently unequal bargaining positions; [and] (2) the motivation for entering the contract must be a non-profit motivation, i.e., to secure peace of mind, security, future protection; [and] (3) ordinary contract damages are not adequate because (a) they do not require the party in the superior position to account for its actions, and (b)

12

> they do not make the inferior party "whole"; [and] (4) one party is
> especially vulnerable because of the type of harm it may suffer
> and of necessity places trust in the other party to perform; and (5)
> the other party is aware of this vulnerability.

Id.

The Voyager Entities do not allege claims necessary for tortious recovery, but do make other allegations sufficient for a good faith and fair dealing claim. First, the Voyager Entities allege that "under the parties' contracts, KeyBank owed a duty of good faith and fair dealing to act with honesty in fact and to observe reasonable commercial standards in the trade" and that this behavior "deprived the Voyager entities of the benefit of the lending contracts. (Answer ¶ 104, 106). The Voyager Entities allege that despite repeated promises to provide funding, KeyBank prevented the closing of larger loan by failing to satisfy the appraisal condition. (Answer ¶ 71). They further allege that during the remainder of 2007 and 2008, the economic climate deteriorated, but KeyBank continued to represent that it was willing and able to lend the funds to complete the Lodge Project. (Answer, ¶ 76, 79-80, 83-84). The Voyager Entities suggest that "KeyBank exploited the very uncertainties that it had created by revising certain terms of the Construction Loan in its favor, acutely aware that the Voyager Entities had an ever dwindling number of alternatives in the continually worsening credit market." (Voyager Entities' Brief, p. 15; Answer, ¶¶ 71, 77, 83). These allegations are sufficient to imply a breach of the implied covenant of good faith and fair dealing. Therefore, KeyBank's motion to dismiss will be denied as to Count II.

D. FRAUDULENT AND NEGLIGENT MISREPRESENTATION CLAIMS

KeyBank asserts that the Voyager Entities' fraudulent and/or negligent misrepresentation claims are nothing more than a reassertion of their promissory estoppel claims and that the fraud claims must be dismissed because they fail to satisfy the strict pleading standard for such claims. Federal Rule of Civil Procedure 9(b) requires that "[i]n all

13

averments of fraud...,the circumstances constituting fraud....shall be stated with particularity."

Fed.R.Civ.P. 9(b). In Lum v. Bank of America 361 F.3d 217, 223-24 (3d Cir.2004), the Court of

Appeals for the Third Circuit explained the pleading standard imposed on allegations of fraud:

> In order to satisfy Rule 9(b), plaintiffs must plead with particularity
> "the 'circumstances' of the alleged fraud in order to place the
> defendants on notice of the precise misconduct with which they
> are charged, and to safeguard defendants against spurious
> charges of immoral and fraudulent behavior." Seville Indus. Mach.
> Corp. v. Southmost Mach. Corp, 742 F.2d 786, 791 (3d Cir.1984).
> Plaintiffs may satisfy this requirement by pleading the "date, place
> or time" of the fraud, or through "alternative means of injecting
> precision and some measure of substantiation into their
> allegations of fraud." Id. (holding that a plaintiff satisfied Rule 9(b)
> by pleading which machines were the subject of alleged fraudulent
> transactions and the nature and subject of the alleged
> misrepresentations). Plaintiffs also must allege who made a
> misrepresentation to whom and the general content of the
> misrepresentation. See [Saporito v. Combustion Eng'g 843 F.2d
> 666, 675 (3d Cir.1988) ]; Rolo v. City Investing Co. Liquidating
> Trust, 155 F.3d 644, 658-59 (3d Cir.1998); Klein v. General
> Nutrition Cos., 186 F.3d 338, 345 (3d Cir.1999).

The rule is meant to give the party against which the claims are made adequate notice of the

claims against them.

Under Montana law to state a cognizable claim for fraudulent misrepresentation, nine

elements must be present: 1) a representation; 2) the falsity of the representation; 3) its

materiality; 4) the speaker's knowledge of its falsity or ignorance of its truth; 5) the speaker's

intent that it should be relied on; 6) the hearer's ignorance of the falsity of the misrepresentation;

7) the hearer's reliance on the misrepresentation; 8) the hearer's right to rely on the

misrepresentation; and 9) consequent and proximate injury caused by reliance on the

representation. C. Haydon Ltd. v. Montana Min. Properties, Inc 262 Mont. 321, 325 (1993);

Pipinich v. Battershell, 232 Mont. 507, 511 (1988).

Although not subject to the heightened pleading standard, claims of negligent

misrepresentation include the following elements under Montana law:

14

a) the defendant made a representation as to a past or existing material fact;

b) the representation must have been untrue;

c) regardless of its actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true;

d) the representation must have been made with the intent to induce the plaintiff to rely on it;

e) the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation and it must have been justified in relying upon the representation;

f) the plaintiff, as a result of its reliance, must sustain damage

Osterman v. Sears, Roebuck, &Co, 318 Mont. 342, 352 (2003).

The Voyager Entities' allegations include the claims that KeyBank "intentionally, knowingly, recklessly, and/or negligently" made representations: 1) that Intermountain Consultants had the ability to appraise the Lodge Project in a competent and timely manner; 2) that it (KeyBank) had the capacity and ability to close on a $120 million credit facility for the construction of the Lodge Project on or before October 15, 2007; 3) that KeyBank would allow the $5 million bridge loan to be repaid using the proceeds of the $120 million credit facility; 4) that KeyBank represented that it would discharge the guarantees on the $5 million bridge loan upon repayment of the bridge loan using the proceeds of the $120 million credit facility; and 5) that after failing to close on or before October 15, 2007, KeyBank continually represented through 2007 and 2008 that it had the capacity and ability to close on a credit facility sufficient to allow SP Lodge to complete the Lodge Project, repay the $5 million dollar bridge loan and discharge the guarantees. (Answer ¶ 109). KeyBank argues that these allegations are inadequate under the pleading requirements as they fail to assert any factual basis to support the claim and are vague and show a lack of reasonable reliance.

15

I agree that the Voyager Entities have failed to meet the heightened pleading requirements for fraud. The Voyager Entities were required to plead with specificity the circumstances of the alleged fraud and to name the parties responsible for making the misrepresentations. See Frederico v. Home Depot, 507 F.3d 188, 200-201 (3d Cir. 2007)(Plaintiff failed to name who at Home Depot had informed her of their return policies and made only broad and generic statements about the circumstances of the alleged representations.); Klein v. GNC, Inc., 186 F.3d 338, 345 (3d Cir. 1999) (Plaintiff failed to attribute the alleged statements to a particular member of GNC management.). The Voyager Entities have generally omitted any particular circumstances surrounding these alleged promises including how the promises were made and by whom. No allegations are made of whether these promises are oral or written or to whom at the Voyager Entities these promises were made. The Voyager Entities generally reference KeyBank but fail to mention an individual, or even a group of individuals who were responsible for making these representations. For the last alleged misrepresentation in particular, a significant period of time is mentioned without reference to any specifics surrounding these alleged promises. Of its own accord, the Voyager Entities were involved in significant negotiations with KeyBank for an extended period of time and therefore had the ability to insert particular circumstances into these pleadings as required. As such, the Voyager Entities' fraud claims will be dismissed for lack of specificity.

The Voyager Entities also make negligent misrepresentation claims pursuant to the same representations. In this instance, negligent misrepresentation claims are not subject to the heightened pleading requirement.[1] The Voyager Entities have alleged five representations involving material facts to their negotiations and/or contracts. (Answer ¶ 109). They allege that

---

[1] Courts in the Third Circuit have generally declined to apply the more stringent pleading requirements of Rule 9(b) to claims of negligent misrepresentation. Bionix Development Corp. v. Sklar Corp, 2009 WL 3353154, *3 (E.D.Pa. October 14, 2009).

16

the representations were untrue and were made by KeyBank without any reasonable ground for

believing them not to be true. (Answer ¶ 110). They allege that the misrepresentations were

made with the intent to induce the Voyager entities to rely on the misrepresentations and that

the Voyager Entities were unaware of the falsity of the misrepresentations. (Answer ¶¶ 111-

112). They further suggest that they reasonably relied on the misrepresentations and that the

misrepresentations caused them to act by guaranteeing the $5 million dollar loan and induced

them not to terminate their relationship with KeyBank. (Answer ¶¶ 113-114). These allegations

meet the requirements for a claim of negligent misrepresentation and therefore, KeyBank's

motion will be denied as to this claim.

E.    CONSTRUCTIVE FRAUD CLAIM

As with claims of actual fraud, constructive fraud claims are subject to a heightened

pleading requirement. See Bucci v. Wachovia Bank, 591 F.Supp.2d 773, 782 (E.D.Pa. 2008);

Constructive fraud is defined by statute in Montana as : (1) any breach of a duty which, without

an actual fraudulent intent, gains an advantage to the person in fault or anyone claiming under

him by misleading another to his prejudice or to the prejudice of anyone claiming under him; or

(2) any such act or omission as the law especially declares to be fraudulent, without respect to

actual fraud. MCA 28-2-406. Claims of constructive fraud require similar elements of proof to

actual fraud except that a plaintiff is not required to prove intent to deceive or dishonesty of

purpose. H-D Irrigating, Inc. v. Kimble Properties, Inc, 301 Mont. 34, 43-44 (2000). The

presence of a legal duty, however, is an essential element of a claim for constructive but "does

not require that the Plaintiff establish a fiduciary duty, [but] merely requires the establishment of

a duty." Id. at 43 citing Mattingly v. First Bank of Lincoln 285 Mont. 209, 218-219 (1997).

KeyBank makes separate arguments regarding the failure of this claim due to a failure

by the Voyager Entities to identify a specific duty owed by KeyBank to Voyager Entities. In any

17

event, these claims fail to meet the specific pleading requirements for the same reasons that the Voyager Entities' claims of fraudulent misrepresentation fail. Since the pleading requirements are heightened and the Voyager Entities have essentially alleged the same five promises/misrepresentations as their other claims (this time referring to them as "false impressions"), these claims fail to meet the pleading requirements because there is a lack of specificity in the circumstances and individuals involved in making creating these "false impressions." As such, the Voyager Entities' claims for constructive fraud will be dismissed.

F.    DECLARATORY JUDGMENT

Finally, the Voyager Entities state a request for declaratory judgment in which they assert that KeyBank, through its own inequitable conduct has constructively discharged any obligation on behalf of the Voyager Entities to repay the $5 million dollar loan of which the Voyager Entities are guarantors. (Answer ¶ 129). They suggest that there is a substantial and continuing controversy between the Voyager Entities and KeyBank concerning whether the Voyager Entities have an obligation to repay the $5 million dollar loan. (Answer ¶ 130). In its brief, KeyBank argues that this declaratory judgment action is unnecessary as it has already initiated the present action seeking a determination of its rights under contract and monetary judgment pursuant to the Payment Guaranty.

Actions for declaratory judgment are procedural in nature and in purpose. McKenna v. PSS World Medical Inc., 2009 WL 2007116, *2 (W.D.Pa. 2009). Although the Voyager Entities cite no statutory provisions under which they claim declaratory relief, the Declaratory Judgment Act permits "any court of the United States, upon the filing of an appropriate pleading, [to] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "[The Act's] purpose is adjust controversies that are [in existence] but not actually crystalized in litigation." Ohio Cas.

18

Ins. Co. v. Maloney, 44 F.Supp. 312, 314 (D.C.Pa. 1942). The Voyager Entities argue that a "decision by the Court that the Voyager Entities did not breach the Payment Guaranty would not render moot the Voyager Entities' claims that they are discharged from their obligations under the contract." (Voyager Entities' Brief, pp. 20).

The Voyager Entities essentially argue that the issues raised in the complaint and by the counter claim are separate and distinct, and that a determination of the issues raised in the complaint would not necessarily determine their rights to be discharged under the contract. Circumstances can exist where a declaratory judgment action would be dismissed for redundancy:

> A counterclaim for declaratory relief may be dismissed as redundant where 'there is complete identity of factual and legal issues between the complaint and counterclaim.' Dismissal is justified in such cases on the theory that the counterclaim will become moot upon disposition of the complaint. Considering the difficulty in determining whether a declaratory judgment counterclaim is in fact redundant prior to trial, however, authorities suggest that a court should dismiss such counterclaims only when there is no doubt that they will be rendered moot by adjudication of the main action.

Principal Life Insurance Co. v. Lawrence Rucker 2007 Ins. Trust ---F. Supp.---,2009 WL 4800567, *2 (D.Del., December 11, 2009)(citations omitted). Turning to the facts of this case, it is evident that dismissal of this declaratory action counterclaim is inappropriate at this point. In the instance that the Voyager Entities are found not to have breached the contract under KeyBank's complaint, the issue remains as to whether KeyBank has "actively and constructively discharged" the Voyager Entities obligations to repay the five million dollar loan. As such, KeyBank's motion to dismiss will be denied as to Count V.

## V. CONCLUSION

In conclusion, based on pleadings and the briefs of the parties, the Voyager Entities have failed to state a claim for fraudulent misrepresentation and constructive fraud. Therefore,

19

KeyBank's motion to dismiss is granted without prejudice as to the Voyager Entities'
counterclaims for fraudulent misrepresentation and constructive fraud in Counts III and IV and is
denied as to Count I, II, and V and to Count III's claim for negligent misrepresentation. The
Voyager Entities may file Amended Counterclaims curing the deficiencies, noted herein, in their
counterclaims for fraudulent misrepresentation and constructive fraud by February 18, 2010.

BY THE COURT:


/s/ Donetta Ambrose

Donetta Ambrose

U.S. District Judge

20

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEYBANK NATIONAL ASSOCIATION,          )
                                        )
          Plaintiff,                    )
                                        )
     -vs-                               )          Civil Action No. 09-1238
                                        )
VOYAGER GROUP, LP and VOYAGER,          )
INVESTMENTS, LP,                        )
                                        )
          Defendants.                   )

AMBROSE, District Judge.

## ORDER

AND NOW, this 4th day of February, 2010, it is Ordered that KeyBank's Motion to Dismiss

Counterclaims (Docket No. 16) is DENIED as to Counts I,II,and V and the negligent

misrepresentation claim of Count III and GRANTED without prejudice as to the fraudulent

misrepresentation claim of Count III and Count IV. The Voyager Entities may file Amended

Counterclaims curing the deficiencies, as noted in the above opinion, in their counterclaims for

fraudulent misrepresentation and constructive fraud by February 18, 2010.

                              BY THE COURT:


                              /s/ Donetta W. Ambrose
                              Donetta W. Ambrose,
                              U.S. District Judge

21