IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEYBANK NATIONAL ASSOCIATION,  )
                                )
    Plaintiff,                   )
                                )
-vs-                            )   Civil Action No. 09-1238
                                )
VOYAGER GROUP, LP and VOYAGER,  )
INVESTMENTS, LP,                )
                                )
    Defendants.                  )

<u>AMBROSE</u>, District Judge.

## OPINION AND ORDER OF COURT

### SYNOPSIS

Pending before the Court is the Motion to Dismiss Amended Answer to Complaint and Counterclaims filed by Plaintiff Keybank National Association (Doc. Nos. 26, 28). Both parties have filed briefs in these matters. (Doc. Nos. 29, 31). After careful consideration of the submissions of the parties, and for the reasons discussed below, Keybank National's motion (Doc. No. 28) is DENIED.

### I. STANDARD OF REVIEW

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) for a Motion to Dismiss if, reading the complaint in the light most favorable to the non-moving party, and accepting all factual allegations as true, no relief could be granted under any "reasonable reading of the complaint" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008). A complaint must be dismissed even if the claim to relief is "conceivable," because a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."Ashcroft v. Iqbal, ---U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

## II. FACTS

Plaintiff KeyBank National Association (Keybank or Plaintiff) is a national banking association with its principal place of business in Ohio. (Complaint, Doc. No. 1, ¶ 1). Defendant Voyager Group, LP is a Montana limited partnership organized and existing under the laws of the State of Montana, with its principal place of business in Pittsburgh. (Complaint ¶ 2). Defendant Voyager Investments LP is a Pennsylvania limited partnership organized and existing under the laws of Pennsylvania with its principal place of business in Pittsburgh. (Id. at ¶ 3;).

As part of a development deal in Montana known as Spanish Peaks, Spanish Peaks Holdings, LLC organized SP Lodge on March 1, 2007. (Amended Answer and Counterclaims, Doc. No. 26, ¶ 50). For the construction of the Spanish Peaks Lodge Project, SP Lodge sought approximately $120 million in financing from several lenders, including Keybank. (Id. at ¶ 51, 52). Beginning in May 2007, KeyBank's representatives, including David Paisley, traveled to Montana with representatives of SP Lodge (the borrower) and the Voyager Entities (the guarantor), including Douglas Hein and James Dolan, to evaluate the potential Lodge Project for underwriting by KeyBank. (Id. at ¶ 53). On June 21, 2007, KeyBank determined that it would proceed with the process of underwriting the $120 million dollar credit facility for the construction of the project. (Id. at ¶ 54). As a condition to the underwriting, KeyBank wanted to perform an appraisal of the Lodge Project. (Id. at ¶¶ 55, 60). SP Lodge recommended several appraisers, but KeyBank rejected those choices and picked Intermountain Consultants, Inc. in July 2007. (Id. at ¶ 55). SP Lodge expressed concern over the ability of Intermountain to perform the work. (Id. at ¶ 56).

On July 31, 2007, KeyBank provided a written commitment to lend $120 million to SP Lodge for the development and construction of the Lodge Project. Subject to certain terms and conditions, including the completion of a satisfactory appraisal of the property, the commitment was set to expire on October 15, 2007 if the final loan documents were not executed by that time. (Id. at ¶¶ 58, 60). In issuing the loan commitment, Mr. Paisley and other representatives of KeyBank assured Mr. Hein and other representatives of SP Lodge and the Voyager Entities that KeyBank had the intent and ability to obtain a timely appraisal of the Lodge Project and to satisfy other conditions to closing that were within its control. (Id. at ¶ 61).

Beginning in July 2007 and continuing through October of 2007, Mr. Paisley and other KeyBank representatives spoke on the telephone with Mr. Hein and others on numerous occasions. These discussions centered around the details of KeyBank's loan commitment and the loan closing process. (Id. at ¶ 63). During these conversations, it was represented that KeyBank's selected appraiser had the ability to complete an appraisal of the Lodge Project, and that KeyBank had the intent and ability to satisfy the conditions so that the loan could close in a timely manner. (Id.). On or about September 14, 2007, Mr. Paisley also represented in writing to the contractor hired to construct the Lodge Project that KeyBank had committed to finance and was in the process of closing the loan on the Lodge Project. (Id. at ¶ 64). In reliance on these representations, the construction contractor entered into agreements with subcontractors and vendors to begin construction on the Lodge Project. (Id. at ¶ 65).

On September 17 and 18, 2007, SP Lodge, the Voyager entities and KeyBank met at Spanish Peaks with representatives of various banks interested in joining the lending syndicate that KeyBank had agreed to form to underwrite the $120 million credit facility. Id. at ¶ 66). At the meeting, representatives of KeyBank, including David Paisley, Robert Sawitzke and Lisa Todd, met with representatives of SP Lodge, the Voyager entities and other individuals involved

3

with the Lodge Project, including Douglas Hein, James Dolan, Bryan Tate, and Dean Genge, as well as potential syndicate members, including Bank of Scotland, TierOne Bank, Home Savings and Loan Company, and Associated Bank. (Id. at ¶ 67). During the course of the meeting, Todd, Paisley, and Sawitzke made oral and written representations to Hein, Dolan and others at Voyager, as well as other potential syndicate members, that KeyBank had the intent and ability to obtain a timely appraisal of the Lodge Project, ensure the occurrence of closing conditions, and lend the funds necessary to complete the Project. (Id. at ¶ 68). KeyBank's representatives proposed a closing timeline in which closing was set for October 15, 2007. (Id.). At or after the meeting, other lenders agreed to join the syndicate, pending the completion of KeyBank's appraisal. (Id. at ¶ 69).

KeyBank also offered to make a $5 million dollar loan to SP Lodge to enable it to begin construction immediately. (Id. at ¶ 70). Paisley and other individuals from KeyBank represented to Hein and other representatives of SP Lodge and the Voyager Entities that KeyBank would lend the funds necessary to perform the Lodge Project in short order, and that the $5 million would be repaid from the larger loan. (Id. at ¶¶ 71, 74). SP Lodge agreed to the $5 million dollar bridge loan and the Voyager Entities guaranteed repayment of that loan. (Id. at ¶¶ 72, 73). On September 28, 2007, KeyBank formally entered into the $5 million dollar loan with SP Lodge that was subject to a 90-day term with one 30-day extension (the parties signed a Payment Guaranty). (Id. at ¶ 76; Complaint, Exhibit 4).

The $120 million dollar credit facility did not close at the pre-determined time because KeyBank's selected appraiser, Intermountain Consultants, Inc., resigned from the project in October, stating that it lacked the requisite ability to properly appraise the Lodge Project. (Id. at ¶ 77). KeyBank then engaged Cushman & Wakefield, one of the firms originally recommended by SP Lodge, to appraise the Lodge Project. This delayed the finalization of the syndicate and

4

the timely closing of the credit facility because the appraisal was started anew. Id. at ¶ 78). From October 2007 until February 2008, Cushman & Wakefield appraised the Lodge Project. (Id. at ¶ 79).

On February 6, 2008, Paisley and David Mosebar of KeyBank and Tyler Dustman of Cushman & Wakefield held a conference call with Hein to confer about the draft appraisal. During that call, the parties discussed the Lodge Project's appraisal value and its potential effect on KeyBank's total obligation pursuant to the July 31, 2007 loan commitment. (Id. at ¶ 83). On February 7-8, 2008, Paisley and Dennis Johnson (KeyBank's counsel) visited Pittsburgh to meet with Hein and Dolan. Paisley stated that, based on the Cushman & Wakefield appraisal, the amount that KeyBank was to lend to SP Lodge would be reduced in accordance with the loan-to-value formula set forth in the July 31, 2007 loan commitment. As a result, SP Lodge was required to secure additional monies from an alternative funding source or an equity contribution. (Id. at ¶ 84).

Throughout the spring and summer of 2008, KeyBank representatives, including Paisley and Regina Reichard, continued to represent to SP Lodge and the Voyager Entities that KeyBank could complete the credit facility despite adverse economic conditions due to the credit crisis. (Id. at ¶ 86). On April 1-3, 2008, Reichard traveled to Montana to visit the Spanish Peaks site to evaluate the Lodge Project. During this trip, Reichard had discussions with Hein and other representatives of SP Lodge and the Voyager Entities, during which time she reaffirmed KeyBank's intentions to finance the credit facility. (Id. at ¶ 87). KeyBank also notified SP Lodge that some of the lenders that had agreed to participate in the lending syndicate in 2007 had withdrawn. In an effort to assist KeyBank, SP Lodge approached Big Sky Western Bank to participate in the syndicate on a replacement basis. (Id. at ¶ 89.). Representatives of

Big Sky Western Bank conferred with Paisley, at which time Paisley reaffirmed KeyBank's intentions to finance the project. (Id. at ¶ 90).

Throughout the summer of 2008, Paisley and other KeyBank representatives had telephone discussions with Hein and other representatives of SP Lodge and the Voyager Entities, during which he represented that KeyBank had the intent and ability to finance the credit facility. (Id. at ¶ 91). Throughout this time, KeyBank repeatedly extended the term of the $5 million bridge loan, as Paisley and other KeyBank representatives renewed their promises that the credit facility would close promptly. (Id. at ¶ 92). SP Lodge continued to move forward with construction on the Lodge Project and the Voyager Entities contributed additional funds towards its construction. (Id. at ¶ 93).

In August 2008, Paisley and other KeyBank Representatives again renewed their promises to Hein and other representatives of SP Lodge and the Voyager Entities to underwrite the Lodge Project's financing but stated that they could no longer honor the 75% loan-to-value ratio to which it originally committed under the July 31, 2007 loan commitment. KeyBank and SP Lodge agreed to a lower loan-to-value ration, requiring SP Lodge to line up additional financing from other lenders to complete the project. (Id. at ¶ 95). SP Lodge arranged $5 million in short-term financing to allow work to continue on the Lodge Project while the latest version of the credit facility was finalized. (Id. at ¶ 98). The credit facility, however, never closed. (Id. at ¶ 99).

### III. PROCEDURAL HISTORY

KeyBank filed its complaint against the Voyager Defendants on September 11, 2009. (Doc. No. 1). In its complaint, Plaintiff KeyBank alleges one count of breach of payment guaranty against each Voyager Defendant. Defendants filed an answer, affirmative defenses, and counterclaims to Plaintiff's complaint on October 5, 2009. (Doc. No. 5). Defendants'

counterclaims include five separate claims against KeyBank. They allege that KeyBank made clear and unambiguous promises and that the Voyager Defendants detrimentally relied on those promises under a theory of promissory estoppel (Count I); engaged in a breach of the duty of good faith and fair dealing (Count II); engaged in fraudulent or negligent misrepresentations (Count III); and engaged in constructive fraud (Count IV). The Voyager Defendants also put forth a request for declaratory judgment (Count V).

Subsequent to the filing of the action in the Western District of Pennsylvania on October 2, 2009, Spanish Peaks, LLC, Voyager Group, L.P., and Voyager Investments, L.P. filed an action in the District of Montana. <u>Spanish Peaks Lodge, LLC, et al v. KeyBank National Association, et al.</u>, Case No. 2:09-cv-00074-SEH-RKS (D.Mont.). On October 15, 2009, The Voyager Entities filed, in the Western District action, a Motion to Transfer Venue to the District of Montana Pursuant to § 1404(a). (Doc. No. 10). On October 28, 2009, in lieu of an answer to the Voyager Entities' counterclaims, KeyBank filed a motion to dismiss. (Doc. No. 16). Plaintiff argued that the Payment Guaranty prohibits the Voyager entities from asserting counterclaims and that each Count of the Voyager Defendants' counterclaims fail to state a cause of action. On December 22, 2009, I denied the Voyager Entities' Motion to Transfer Venue. (Doc. No. 24).

On February 4, 2010, KeyBank's Motion to Dismiss was granted as to the Voyager Entities' fraud and constructive fraud claims and denied in all other respects. (Doc. No. 25). On February 18, 2010, the Voyager Entities filed an Amended Answer and Counterclaims. (Doc. No. 26). KeyBank filed a Motion to Dismiss Amended Counterclaims and brief on March 3, 2010. (Doc. Nos. 28, 29). The Voyager Entities filed a response on March 18, 2010. (Doc. No. 31). This motion is now ripe for resolution.

## IV. KEYBANK'S MOTION TO DISMISS

The Voyager Entities have restated their counterclaims for promissory estoppel, breach of the duty of good faith and fair dealing, negligent misrepresentation and request declaratory judgment. (Amended Answer, ¶¶ 107-142). The Entities have amended their fraudulent misrepresentation and constructive fraud claims. (Id. at ¶¶ 118-136). KeyBank argues that the Payment Guaranty prohibits the Voyager Entities from asserting their fraud counterclaims at this time. They further argue that the Voyager entities have failed to state a claim for fraud or constructive fraud upon which relief could be granted.

A.   THE OPERATION OF CLAUSE 3 OF THE PAYMENT GUARANTY

KeyBank also argues that Clause 3(c) of the Payment Guaranty operates to foreclose the Voyager Entities from making any counterclaims at this time Clause 3(c), which KeyBank mistakenly referenced in its first motion to dismiss as Clause 3(b), states,

> 3.   Each guarantor does hereby...waive any defense, right to set-off or other claim which such Guarantor or Borrower may have against Lender, or the holder of the Note.

(Complaint, Exhibit 4). The Voyager Entities argue that the section is void under Montana Code §§ 28-2-702, 708 and that it constitutes an unlawful object under Montana law. They also argue that because KeyBank raised Clause 3(b) rather than 3(c) in its initial motion, Federal Rule of Civil Procedure 12(g)(2) bars KeyBank from raising it now.

I do not agree that Federal Rule of Civil Procedure 12(g)(2) bars the Defendants from raising their argument that Clause 3(c) blocks Plaintiff's claims. They raised essentially the same argument in their brief in support of the first Motion to Dismiss. They mistakenly referenced Clause 3(b), but this mistake does not suggest that they are now raising a new issue or objection, therefore, Rule 12(g)(2) would not apply.[1] In the February 4, 2010 opinion,

---

[1] Federal Rule of Civil Procedure 12(g)(2) provides that, "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."

8

however, I refrained from ruling on the whether Clause 3(c) foreclosed all of the Voyager Entities' claims for two reasons: 1) neither party had fully briefed the issue of whether the Clause operated as a valid release of all of the Voyager Entities' claims and defenses and 2) I refrained from ruling on the applicability of the parol evidence rule until after discovery. Although the issue has been more fully briefed in this Motion and response, I will continue to forego ruling on this because the issue of the applicability of the parole evidence rule has not materially changed with the filing of the amended counterclaims and the pleadings continue to suggest that further documentation of the parties' relationship may exist that would alter the operation of the Payment Guaranty.

B.  GIST OF THE ACTION DOCTRINE

KeyBank also now raises an argument suggesting that the Voyager Entitites' fraud claims are barred by the gist of the action doctrine as set forth in eToll, Inc. v. Elias/Savion Adver. Inc., 811 A.2d 10 (Pa. Super. Ct. 2002). In eToll Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10 (Pa. Super. 2002), the Pennsylvania Superior Court described the "gist of the action" doctrine as being "designed to maintain the conceptual distinction between breach of contract claims and tort claims [by] preclud[ing] plaintiffs from recasting ordinary breach of contract claims into tort claims." Id. at 14. The court described the differences between tort and contract actions as follows:

> Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals...To permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled form of actions.

eToll, 811 A.2d at 14 (citing Bash v. Bell Tel. Co., 601 A.2d 825, 829 (Pa. Super. 1992)). As a result, "a claim should be limited to a contract claim when 'the parties' obligations are defined by

9

the terms of the contracts, and not by the larger social policies embodied by the law of torts."

Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc, 247 F.3d 79, 104 (3d Cir. 2001), cert. denied, 534 U.S. 1162, quoting, Bash, 601 A.2d at 830. Therefore, the doctrine essentially bars:

> tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the turns of the contract.

eToll, 811 A.2d at 19.

The gist of the action doctrine is a quasi-procedural Pennsylvania common law rule. Both parties have consistently argued that Montana law applies to both the contract (through a choice of law clause) and tort claims in this case. The gist of the action doctrine has no application in Montana law and, in fact, KeyBank does not argue otherwise. Since the gist of the action doctrine is a rule governing actions under Pennsylvania law, it cannot be applied to this case as the parties have consistently argued and continue to argue their claims under the laws of Montana. KeyBank makes no further arguments regarding Counts I, II, V and the negligent misrepresentation claim in Count III, therefore, I will analyze each fraud claim from the standpoint of whether sufficient factual allegations have been rendered so as to state a claim.

C. FRAUDULENT AND NEGLIGENT MISREPRESENTATION CLAIMS

KeyBank asserts that the Voyager Entities' fraudulent misrepresentation claims must be dismissed because they fail to satisfy the strict pleading standard for such claims and substantively failed to state a claim. Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud...,the circumstances constituting fraud....shall be stated with particularity." Fed.R.Civ.P. 9(b). In Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir.2004), the Court of Appeals for the Third Circuit explained the pleading standard imposed on allegations of fraud:

10

> In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir.1984). Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* (holding that a plaintiff satisfied Rule 9(b) by pleading which machines were the subject of alleged fraudulent transactions and the nature and subject of the alleged misrepresentations). Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation. See [Saporito v. Combustion Eng'g, 843 F.2d 666, 675 (3d Cir.1988) ]; Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658-59 (3d Cir.1998); Klein v. General Nutrition Cos., 186 F.3d 338, 345 (3d Cir.1999).

The rule is meant to give the party against which the claims are made adequate notice of the claims against them.

Under Montana law to state a cognizable claim for fraudulent misrepresentation, nine elements must be present: 1) a representation; 2) the falsity of the representation; 3) its materiality; 4) the speaker's knowledge of its falsity or ignorance of its truth; 5) the speaker's intent that it should be relied on; 6) the hearer's ignorance of the falsity of the misrepresentation; 7) the hearer's reliance on the misrepresentation; 8) the hearer's right to rely on the misrepresentation; and 9) consequent and proximate injury caused by reliance on the representation. C. Haydon Ltd. v. Montana Min. Properties, Inc, 262 Mont. 321, 325 (1993); Pipinich v. Battershell, 232 Mont. 507, 511 (1988).

The Voyager Entities' allegations include the claims that KeyBank "intentionally, knowingly, recklessly, and/or negligently" made representations: 1) that Intermountain Consultants had the ability to appraise the Lodge Project in a competent and timely manner; 2) that it (KeyBank) had the capacity and ability to close on a $120 million credit facility for the construction of the Lodge Project on or before October 15, 2007; 3) that KeyBank would allow

11

the $5 million bridge loan to be repaid using the proceeds of the $120 million credit facility; 4) that KeyBank represented that it would discharge the guarantees on the $5 million bridge loan upon repayment of the bridge loan using the proceeds of the $120 million credit facility; and 5) that after failing to close on or before October 15, 2007, KeyBank continually represented through 2007 and 2008 that it had the capacity and ability to close on a credit facility sufficient to allow SP Lodge to complete the Lodge Project, repay the $5 million dollar bridge loan and discharge the guarantees. (Amended Answer, ¶ 199). KeyBank argues that these allegations are inadequate under the pleading requirements as they fail to assert an appropriate factual basis to support the claim and are vague and show a lack of reasonable reliance.

In the February 4, 2010 opinion, I found that the Voyager Entities failed to meet the heightened pleading requirements for fraud because they generally omitted "any particular circumstances surrounding these alleged promises including how the promises were made and by whom." As evidenced by the facts plead in the Amended Counterclaims as referenced in the factual background above, these deficiencies have been remedied. The Voyager Entities have also adequately addressed the nine requirements for a fraud claim under Montana law for each of their allegations, and thus KeyBank's motion as to Count II will be denied.

D.   CONSTRUCTIVE FRAUD CLAIM

As with claims of actual fraud, constructive fraud claims are subject to a heightened pleading requirement. See Bucci v. Wachovia Bank, 591 F.Supp.2d 773, 782 (E.D.Pa. 2008); Constructive fraud is defined by statute in Montana as : (1) any breach of a duty which, without an actual fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him; or (2) any such act or omission as the law especially declares to be fraudulent, without respect to actual fraud. MCA 28-2-406. Claims of constructive fraud require similar elements of proof to

actual fraud except that a plaintiff is not required to prove intent to deceive or dishonesty of purpose. H-D Irrigating, Inc. v. Kimble Properties, Inc, 301 Mont. 34, 43-44 (2000).

The Voyager Entities have sufficiently plead the requirements for this claim. KeyBank suggests that this claim is deficient due to a failure by the Voyager Entities to identify a specific duty owed by KeyBank to Voyager Entities. The presence of a legal duty is an essential element of a claim for constructive fraud but "does not require that the Plaintiff establish a fiduciary relationship, [but] merely requires the establishment of a duty." Id. at 43 citing Mattingly v. First Bank of Lincoln, 285 Mont. 209, 218-219 (1997). Duties sufficient to give rise to a claim for constructive fraud may arise in commercial transactions. Mattingly, 285 Mont. at 220, citing McJunkin v. Kaufman and Broad Home Sys. Inc, 229 Mont. 432, 439-440 (1987). Based on the factually stated relationship between the parties, I find that a sufficient duty has been plead to support a claim for constructive fraud. As a result, KeyBank's Motion to Dismiss will be denied as to Count IV.

## V. CONCLUSION

In conclusion, based on pleadings and the briefs of the parties, the Voyager Entities have adequately stated claims for fraudulent misrepresentation and constructive fraud. As the issue of applicability of the Payment Guaranty has already been addressed at this stage and the gist of the action doctrine is inapplicable, the remaining Counts will also go forward. KeyBank's Motion to Dismiss, therefore, is denied.

BY THE COURT:

/s/ Donetta Ambrose

Donetta Ambrose

U.S. District Judge

13

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEYBANK NATIONAL ASSOCIATION,           )<br>                                         )<br>         Plaintiff,                     )<br>                                         )<br>   -vs-                                  )<br>                                         )<br> VOYAGER GROUP, LP and VOYAGER,          )<br> INVESTMENTS, LP,                        )<br>                                         )<br>         Defendants.                     ) | Civil Action No. 09-1238 |

AMBROSE, District Judge.

## ORDER

AND NOW, this 7th day of April, 2010, it is Ordered that KeyBank's Motion to Dismiss Amended Counterclaims (Docket No. 28) is DENIED as to all Counts.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose,
U.S. District Judge

14